UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE SANTIAGO,<br><br>    Petitioner,<br><br>  v.<br><br>MATTHEW J. DIVRIS,<br><br>    Respondent. | No. 4:21-cv-40115-TSH |

**REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION TO
DISMISS AND PETITIONER'S MOTION TO HOLD PETITION IN ABEYANCE**

August 3, 2022

Hennessy, M.J.

On November 16, 2021, pro se Petitioner Jose Santiago ("Santiago"), an inmate at the North Central Correctional Institution in Gardner, Massachusetts ("NCCI") filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in Massachusetts Superior Court. [Dkt. No. 1]. Santiago simultaneously filed a motion asking the Court to hold his petition in abeyance. [Dkt. No. 2]. On February 10, 2022, Respondent Matthew J. Divris ("Respondent") moved to dismiss the petition and opposed Santiago's motion to hold his petition in abeyance. [Dkt. Nos. 9, 10, 11]. Santiago filed an opposition to Respondent's motion to dismiss, a reply to Respondent's opposition to holding the petition in abeyance, and an affidavit with attachments on March 15, 2022. [Dkt. Nos. 14, 15, 16]. Judge Hillman referred both motions to me for a Report and Recommendation. [Dkt. No. 18].

I RECOMMEND that Respondent's motion to dismiss the habeas petition be GRANTED and the petition be dismissed in its entirety. Santiago's motion to hold his habeas petition in abeyance should be DENIED.

**I.    BACKGROUND**

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); see also Gomes v. Silva, 958 F.3d 12, 16 (1st Cir. 2020).  Therefore, in its recitation of the facts, this Court borrows extensively from the opinion of the Supreme Judicial Court ("SJC").  See Glacken v. Dickhaut, 585 F.3d 547, 548 (1st Cir. 2009).

**A.    Santiago's Criminal Conduct**

On March 2, 2012, Santiago gathered with friends at a Springfield nightclub to celebrate the birthday of his partner, Jessica Rojas ("Rojas").  Commonwealth v. Santiago, 485 Mass. 416, 417 (2020).  Witnesses described Santiago as "intoxicated and apparently upset with [Rojas]."  Id. Around 1:30 AM, Santiago got into an argument with Rojas's cousin, Carmen Aviles ("Aviles"), and a bouncer removed Santiago from the nightclub.  Id.  Rojas and Aviles followed Santiago outside, where they "continued to argue" until Aviles punched Santiago, and he punched Aviles back.  Id.  An unknown individual from the crowd that gathered then hit Santiago "with enough force to knock him to the ground and, possibly, to lose consciousness."  Id.  Medical records introduced at trial indicate that Santiago was treated for multiple facial fractures on March 5, 2012, a few days later.  Id. at 417 n.2.  However, those medical records also show that Santiago "denied having lost consciousness," and witness testimony "differed" as to whether the hit had "knocked out" Santiago.  Id.; see also id. at 424 and n.7.

Two partygoers, Alisha Martinez ("Martinez") and Suehaley Arce ("Arce"), followed Santiago, Rojas and Aviles out of the nightclub and escorted them to a park across the street.  Id.

2

at 417–18.  Witnesses testified that Santiago kept berating Rojas "and hit her in the mouth."[1]  Id. at 418.  A third partygoer, Antonio Camacho ("Camacho"), "left the nightclub approximately five minutes" later.  Id.  Camacho, Martinez and Arce then guided the group towards Rojas's vehicle, where they made plans to drive to Rojas's house: Camacho would drive Santiago in Rojas's car, while Rojas would drive separately with Martinez and Arce.  Id.  Camacho and Santiago arrived first, and Santiago knocked on a neighbor's door to use the bathroom.[2]  Id.; [see also Dkt. No. 10-1 at 11].  Jose Rivas ("Rivas"), the neighbor's boyfriend, who was familiar with Santiago, answered the door and noticed that Santiago was "visibly injured" and "stumbled . . . while entering the house."  Santiago, 485 Mass. at 418.  Once Rojas arrived with Martinez and Arce, Camacho and Santiago accompanied them into Rojas's house.  Id.

Santiago and Rojas continued to argue as Camacho, Martinez and Arce "unsuccessfully tried to find someone to take" Santiago home.  Id.  Santiago asked them to leave so he and Rojas could be alone, while Rojas said she wanted Santiago to leave.  Id.  Martinez and Arce departed, but Camacho stayed and continued making calls to find Santiago a ride.  Id.  "Camacho was making a call" when Santiago "emerged from the kitchen, pressing an object to his leg, and sat down on a couch next to" Rojas.  Id. at 419.  Santiago noticed Camacho was watching and "dropped the object—a knife—to the floor and kicked it out of sight under the couch."  Id.  Santiago again told Camacho that he wanted to be alone with Rojas, but Camacho refused to leave.  Id.  "Shortly thereafter," Santiago "returned to the kitchen, emerged with a second knife, and began stabbing" Rojas.  Id.  Camacho tried to intervene, but Santiago threatened him with the knife, so Camacho left to get help from the neighbor and her boyfriend, Rivas.  Id.  While the neighbor

---

[1] Testimony showed that an unknown individual in the park, angry with Santiago for hitting Rojas, "began to wrestle" with Santiago and then left the area.  Commonwealth v. Santiago, 485 Mass. 416, 418 (2020).  This did not play a role in Santiago's appeal to the SJC and is not part of his habeas petition.
[2] Rojas's neighbor is not identified by name.

3

called 911, Camacho returned to Rojas's house with Rivas.  Id.  Rivas testified that when they opened the door, they saw Santiago walk to the kitchen, return with a third knife, and begin walking towards Rojas.  Id.  "Rivas recalled that the defendant 'was [not] the same person' as usual," so he "grabbed" Santiago and "told him to 'wake up[.]'"  Id.  "According to Rivas," Santiago "seemed to grasp the situation and immediately returned to the kitchen and left through the rear door."  Id.

Rojas was still conscious when police and paramedics arrived, and she identified Santiago as her assailant.  Id.  She was transported to the hospital, where she died of her injuries.  Id.  "The medical examiner testified that the victim had been stabbed more than one hundred times."  Id.  Santiago was taken into custody on a later date and indicted on charges of murder in the first degree against Rojas, as well as two counts of assault and battery by means of a dangerous weapon against Camacho and Rivas.  Id. at 419–20.  Santiago pleaded not guilty to the charges.  [Dkt. No. 1 at 1].

**B.      State Court Proceedings**

Prior to trial, Santiago "filed a notice of an intent to rely on a defense of a lack of criminal responsibility and requested funds to retain an expert witness in support of this defense."  Santiago, 485 Mass. at 420.  The Superior Court ordered that Santiago "also submit to examination by a court-appointed examiner," but when Santiago refused the Commonwealth moved "to preclude [Santiago] from calling his own expert witness," which Santiago did not oppose.  Id.  At trial, Santiago did not testify or call witnesses, though he did "introduce his medical records from his treatment, two days after the assault, which documented his head injuries."  Id.  Santiago was convicted on March 6, 2014, of murder in the first degree "on theories of deliberate premeditation and extreme atrocity or cruelty," and of assault and battery with a dangerous weapon against Camacho.  Id.; [see also Dkt. No. 10 at 1].

4

Santiago filed a notice of appeal with the SJC on March 18, 2014.[3] [Dkt. No. 10 at 2]. The appeal was entered with the SJC on December 17, 2014, and Santiago filed his brief on July 16, 2019. [Dkt. No. 14 at 1]. Santiago made four arguments on appeal. First, that when the trial judge responded to a question from the jury she "omitted the instruction that evidence of intoxication may be considered in determining whether the Commonwealth had proven the element of extreme atrocity or cruelty," which omission "gave rise to a substantial likelihood of a miscarriage of justice." [Dkt. No. 10-1 at 15]. Second, that even without expert testimony regarding lack of criminal responsibility and mental impairment, there was "sufficient [other] evidence"—including Santiago's medical records documenting head injury and testimony that Santiago was knocked unconscious—to "entitle" Santiago to jury instructions on those defenses, and "lack of such instructions gave rise to a substantial likelihood of a miscarriage of justice." [Id. at 25]. Third, that trial counsel's "failure to request the omitted instructions" in arguments one and two "amount[ed] to ineffective assistance counsel." [Id. at 36]. And fourth, that it would be "appropriate" for the SJC to use its discretion to reduce Santiago's sentence from first to second degree murder. [Id. at 38].

The SJC heard oral argument on January 7, 2020. [Dkt. No. 14 at 1]. About a week later, on January 15, 2020, Santiago "filed a motion to stay his appeal, so that he could pursue a motion for a new trial in the Superior Court on the ground of ineffective assistance of trial counsel." Santiago, 485 Mass. at 420; [Dkt. No 14 at 1]. The SJC denied that motion, addressing Santiago's ineffective assistance of trial counsel claim "in conjunction" with his direct appeal.[4] Santiago, 485

---

[3] "Under Massachusetts law . . . [a] capital defendant is given the right to appeal from his conviction directly to the full bench" of the SJC. Dickerson v. Latessa, 872 F.2d 1116, 1117 (1st Cir. 1989) (citing M.G.L. c. 278 § 33E). Courts in Massachusetts "use the term 'capital offense' and 'capital defendant' as a shorthand for first degree murder and those convicted of this offense[.]" Id. at 1117 n.1.

[4] The SJC noted that Santiago's "motion for a new trial does not raise any additional arguments beyond those he raises in his appellate brief," and so relied on the "brief, as supplemented by the affidavit of trial counsel appended to the motion for a new trial" to decide Santiago's motion. Santiago, 485 Mass. at 420.

5

Mass. at 420. The SJC issued its opinion on August 13, 2020, rejecting all of Santiago's arguments and affirming the judgment against him. Id. at 417, 430.

The SJC began with Santiago's arguments regarding lack of criminal responsibility and mental impairment, noting that analysis of those defenses is "essentially the same." Id. at 420, 422. "Absent a request from a defendant" the SJC has "never held that a judge is required to instruct the jury on either defense." Id. at 422 (citations omitted). Because Santiago "did not request either instruction," the SJC turned to evaluate "whether the absence" of those instructions "gave rise to a substantial likelihood of a miscarriage of justice, and whether the failure to request such instructions constituted ineffective assistance of counsel." Id. The SJC carefully reviewed the evidence Santiago presented at trial and concluded that it "was not sufficient to warrant instructions on a lack of criminal responsibility or mental impairment." Id. at 427. Where the trial judge was not required to issue either instruction, even had they been requested, "the absence of the instructions did not create a substantial likelihood of a miscarriage of justice" and the SJC discerned no error or ineffective counsel. Id.

The SJC then examined Santiago's argument that the trial judge, responding to a jury question, "omitted . . . a reminder that the jury could consider evidence of [Santiago's] intoxication when deciding whether the Commonwealth had proved that he acted with extreme atrocity or cruelty." Id. at 427–28. Santiago conceded that the trial judge included such instruction in her original charge, which explained that the jury may consider "any credible evidence of the effect on the defendant of his consumption of alcohol in determining whether the Commonwealth has proved beyond a reasonable doubt that [he] committed the killing with extreme atrocity or cruelty." Id. at 428. In responding to the jury's question, the trial judge advised the jury that she was not going to repeat the entire original charge and explicitly "ask[ed]" the jury to "recall all of the

6

descriptions" previously given, including "all the definitions." Id. (emphasis omitted). Assessing the trial judge's response to the jury's question in the context of her entire charge, including the admonition that the supplemental charge was incomplete, the SJC "discern[ed] no error in the . . . reinstruction of the jury and, accordingly, no substantial likelihood of a miscarriage of justice in counsel's decision not to object to that instruction." Id. at 429. Further, because Santiago was convicted of first degree murder on two distinct theories—extreme atrocity or cruelty and deliberate premeditation—"any error in the reinstruction" related to extreme atrocity or cruelty "would not have resulted in prejudice[.]" Id. at 429 n.8.

The SJC also summarily rejected Santiago's contention that his sentence should be reduced from first to second degree murder, noting that after review of "the entire record," it did not "identify" any "other grounds on which to reduce the degree of guilt or order a new trial." Id. at 430. The SJC thus affirmed the trial court's judgments and Santiago's conviction. Id.

### C. The Habeas Petition

Santiago filed his petition in federal court on November 16, 2021, raising four grounds for relief. In Ground One, Santiago asserts a claim he made before the SJC: that in her supplemental charge the trial judge "left out[] the instruction on how intoxication may be considered in determining whether the Commonwealth had proven the element of extreme atrocity or cruelty." [Dkt. No. 1 at 5]. Ground Two likewise echoes a claim raised on appeal to the SJC, that even though "defense counsel presented no expert psychiatric testimony, there was sufficient evidence . . . that the defendant suffered a blow to the face, knocking him unconscious," to show that Santiago's "mental condition" was impaired. [Id. at 7]. Ground Three reasserts the claim that trial counsel's "failure to request the omitted instruction on intoxication" amounts to ineffective

assistance, because "there was clearly no strategic advantage to failing to have the jurors consider" that issue.[5]  [Id. at 8].

Ground Four raises a new claim, which Santiago acknowledges "has not been raised in any of the state courts"—that "appellate counsel was ineffective" because she failed to "give[] [an] expert the proper documents to assess [Santiago] for a [traumatic brain injury ('TBI')]."  [Id. at 10].  Ground Four relates to Santiago's efforts to obtain a new trial while his appeal was pending before the SJC.  On January 25, 2019, appellate counsel filed in Hampden Superior Court a "motion for funds to be used in preparation for new trial," which was allowed in March 2019.[6]  [Dkt. No. 2 at 2].  Santiago alleges that appellate counsel told him in May 2019 that she would pursue additional funds to retain an expert, Dr. Emily Clionsky, who would testify to Santiago's impaired mental condition on the night of the homicide.  [Id.].  However, appellate counsel informed Santiago a few weeks later that the Committee for Public Counsel Services ("CPCS") denied authorization for additional funding because Dr. Clionsky opined that the prospects of a new trial were exceedingly slim.  [Dkt. No. 2 at 2–4, 9].  According to Santiago, once he received his casefile from appellate counsel in January 2021, he found emails between appellate counsel and Dr. Clionsky demonstrating that counsel improperly abandoned the motion for additional funds, never sent records to the expert, and otherwise failed to pursue this line of defense in support of a new trial.  [Dkt. No. 1 at 10].  Santiago argues in Ground Four of his petition that this amounts to ineffective assistance of appellate counsel.

---

[5] Santiago does not reassert a claim of ineffective assistance of counsel based on trial counsel's decision not to pursue expert testimony for lack of criminal responsibility and mental impairment.
[6] It is not clear when in March 2019 the Superior Court granted Santiago's motion for funds.  In his motion to hold his petition in abeyance, Santiago states that the motion was allowed on March 11, 2019.  [Dkt. No. 2 at 2].  However, in his reply to Respondent's opposition to the motion for holding his petition in abeyance, Santiago asserts that the court allowed the motion on March 1, 2019.  [Dkt. No. 16 at 2].

8

Respondent moves to dismiss, arguing that Santiago "failed to exhaust at least Ground Four of his petition." [Dkt. No. 9 at 1]. In his opposition to dismissal, Santiago admits that he was "unable to exhaust" Ground Four and reiterates his position that the Court ought to "stay rather than dismiss" the petition, giving him the opportunity to exhaust Ground Four in Massachusetts courts. [Dkt. No. 14 at 2–3; see also Dkt. No. 2].

## II.   DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Santiago must show that he "exhausted the remedies available in the courts of the State" in which he was convicted. 28 U.S.C. § 2254(b)(1)(A). A "mixed petition" is "a single petition containing some claims that have been exhausted in the state courts and some that have not." Rhines v. Weber, 544 U.S. 269, 271 (2005). A district court "may not adjudicate mixed petitions" because the "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." Id. at 273 (citing Rose v. Lundy, 455 U.S. 509, 518–19 (1982)). When "a petition is deemed mixed, the best practice is for the district court to give the petitioner an opportunity to dismiss the unexhausted claims." DeLong v. Dickhaut, 715 F.3d 382, 387 (1st Cir. 2013) (citing Clements v. Maloney, 485 F.3d 158, 168–69 (1st Cir. 2007)). The "district court also has the option to stay the mixed petition and hold it in abeyance while the petitioner exhausts the unexhausted claims, then lift the stay and adjudicate the petition once all claims are exhausted." Id. (citing Rhines v. Weber, 544 U.S. 269, 275 (2005)). This practice is "commonly known" as "stay and abeyance." Sena v. Kenneway, 997 F.3d 378, 381 (1st Cir. 2021).

Santiago admits that Ground Four of his petition is unexhausted, so the question before the Court is what remedy to apply to resolve his mixed petition. For the reasons stated below, I find that Santiago's unexhausted Ground Four does not merit a stay and abeyance, and that Grounds

One and Two fail to present cognizable federal error and hence are outside the scope of federal habeas review. Ground Three raises a cognizable, exhausted federal issue, and therefore requires an evaluation on the merits. I find that Ground Three fails on the merits and therefore recommend that the petition be dismissed in its entirety.

### A. Ground Four is Not Exhausted and Does not Merit a Stay and Abeyance

Santiago concedes that the constitutional claim alleged in Ground Four of his petition is not exhausted. [Dkt. No. 1 at 10]. To address his failure to exhaust, Santiago moved the Court to stay his petition and hold it in abeyance, affording him the opportunity to exhaust Ground Four in Massachusetts courts. [Dkt. No. 2]. However, stay and abeyance is available "only in limited circumstances," Rhines, 544 U.S. at 275, because it could "undermine Congress' design in AEDPA to encourage finality in criminal proceedings and to streamline the federal habeas process." Josselyn v. Dennehy, 475 F.3d 1, 4 (1st Cir. 2007) (citing Rhines, 544 U.S. at 277). The First Circuit succinctly described when stay and abeyance is appropriate: "the petitioner must show that there was 'good cause' for failing to exhaust the state remedies, the claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics." Id. (citing Rhines, 544 U.S. at 278).

Respondent does not contend, and there is no evidence, that Santiago engaged in "intentionally dilatory tactics." Respondent does argue that Santiago "fails to show good cause for not exhausting" Ground Four, and that this claim is not potentially meritorious. [Dkt. No. 11 at 2–3]. The Court rejects Respondent's position regarding good cause, but agrees that Santiago fails to show that Ground Four is potentially meritorious.

### 1. Santiago Shows Good Cause for Failing to Exhaust Ground Four

Respondent contends that Santiago learned his appellate counsel was abandoning her efforts to obtain additional funds for a new trial as early as May 28, 2019, "more than a year before the [SJC's] judgment affirming [Santiago's] convictions became final, and more than two years before the limitations period" set by AEDPA. [Dkt. No. 11 at 3]. Respondent concludes, therefore, that Santiago "had ample time to pursue an ineffective assistance of counsel claim in state court[.]" [Dkt. No. 11 at 3]. However, Respondent overlooks the fact that Santiago bases his claim for ineffective assistance of appellate counsel on email communications between counsel and Dr. Clionsky, which were not revealed to Santiago until January 4, 2021—five months after the SJC issued its August 13, 2020 opinion, and more than eighteen months after the May 28, 2019 letter on which Respondent relies. [See Dkt. No. 14 at 2 ("Petitioner repeatedly requested his entire case file[] after his conviction was affirmed . . . . Appellate counsel finally responded to the petitioner's request in a January 04,2021 [sic] correspondence."); Dkt. No. 15-1 at 2 (letter from appellate counsel to Santiago dated January 4, 2021, wherein appellate counsel states she "has been reviewing" Santiago's file "to prepare to forward it" as discussed in a "recent phone conversation.")]. Santiago thus shows good cause for his failure to exhaust Ground Four.

### 2. Santiago Has Not Shown that Ground Four is Potentially Meritorious

Despite the absence of dilatory tactics and Santiago's demonstration of good cause for failing to exhaust Ground Four, Santiago's claim of constitutionally ineffective appellate counsel lacks merit.

Santiago asserts that Dr. Clionsky "sent appellate counsel . . . a very detailed list of the materials needed for a preliminary and reasonable review" so as to "properly assess" his case. [Dkt. No. 2 at 5]. Appellate counsel, Santiago contends, "ignored" Dr. Clionsky's instructions,

despite the fact that Dr. Clionsky said she could help Santiago demonstrate that he suffered a traumatic brain injury the night he committed homicide. [Dkt. No. 16 at 4]. According to Santiago, had Dr. Clionsky been "privy to all the discovery," in particular witness testimony that Santiago was "knocked unconscious," Dr. Clionsky could have been instrumental in reviving his defense of lack of criminal responsibility. [Id. at 6–7]. Santiago also alleges that appellate counsel misled him by suggesting she was seeking additional funds for a new trial, even though she "made no attempts" at "filing any additional motion to the courts." [Id. at 5].

"The Supreme Court has explained that an ineffective assistance of counsel claim requires both deficient performance and prejudice." Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "To establish that counsel's performance was deficient, a defendant must show that it fell below an objective standard of reasonableness under the circumstances." Id. (citing Strickland, 466 U.S. at 687–88). The Supreme Court has made clear, however, that "the 'Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" Id. (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003)). Indeed, "[c]ounsel has 'wide latitude in deciding how best to represent a client[.]'" Id. (quoting Gentry, 540 U.S. at 5–6).

Santiago does not show that appellate counsel's performance "fell below an objective standard of reasonableness under the circumstances." The Superior Court allowed Santiago's first motion for funds in March 2019. [Dkt. No. 16 at 2]. Letters and emails Santiago filed with the Court show that appellate counsel then promptly began to investigate retaining an expert, but when Dr. Clionsky informed counsel that it was too late to obtain reliable expert testimony for Santiago—some seven years after the night of the homicide—appellate counsel realized she would

not be able to obtain funding to pursue a new trial, and advised Santiago that her efforts were better spent on his appeal to the SJC.[7] [Dkt. Nos. 15, 15-1].

In an email dated March 30, 2019, Dr. Clionsky discussed at length what materials she would need "for a reasonable review of the medical/psychiatric factors in this case," including medical records, discovery, and booking photos. [Dkt. No. 15-1 at 5–11 ("Exhibit C")]. Appellate counsel responded to Dr. Clionsky the same day or early the next day, clarifying: "all I am doing right now, and all that I have the funds to do, is to look for answers to a few key preliminary questions that might lead to my being able to get additional funds." [Id. at 14 ("Exhibit D")]. In that same email, counsel framed the key issue as "whether there is something else that can be done to demonstrate that if trial counsel had hired a neurologist[,] that would have accomplished something that would likely have helped" in Santiago's defense. [Id.]. Dr. Clionsky replied on March 31, 2019, confirming that appellate counsel was "quite clear" on the status of available funds, and stating that there is something they can do to demonstrate that a neurological evaluation would have helped Santiago at trial: "look[] for clinical evidence of [a mild traumatic brain injury] by scouring the medical records, including the ones that are not here, discovery, transcripts of witnesses' reports and interrogation, interrogations of the defendant, etc." [Id.].

The next correspondence Santiago submitted to the Court is a letter from appellate counsel to Santiago dated May 7, 2019, in which counsel informed Santiago she "will be working on an additional motion for funds for an expert" in his case. [Id. at 29–30 ("Exhibit G")]. Appellate

---

[7] These letters and emails, organized in chronological order, are as follows: March 30, 2019 email from Dr. Clionsky to appellate counsel [Dkt. No. 15-1 at 5–11 ("Exhibit C")]; March 31, 2019 email from Dr. Clionsky to appellate counsel, commenting on counsel's response to Dr. Clionsky's March 30 email [id. at 12–18 ("Exhibit D")]; May 7, 2019 letter from appellate counsel to Santiago [id. at 29–30 ("Exhibit G")]; May 20, 2019 email from appellate counsel to Dr. Clionsky [id. at 26–28 (back of "Exhibit F")]; May 23, 2019 reply email from Dr. Clionsky to appellate counsel's May 20 email [id. at 22–25 (front of "Exhibit F")]; May 28, 2019 letter from appellate counsel to Santiago [id. at 19–21 ("Exhibit E")]; January 4, 2021 letter from appellate counsel to Santiago [id. at 1–2 ("Exhibit A")]; October 4, 2021 letter from CPCS to Santiago [id. at 3–4 ("Exhibit B")].

counsel emailed Dr. Clionsky about two weeks later, on May 20, 2019, apologizing that "it has taken some time" to follow up, and explaining that counsel "had to go and visit Mr. Santiago . . . to find out if we are on the same page regarding how to proceed." [Id. at 26–27 (back of "Exhibit F")]. Appellate counsel then explained to Dr. Clionsky that "the first step will be to obtain funds so that you [Dr. Clionsky] can conduct a more thorough review of the case," and "[i]f the motion for funds is allowed," counsel would "forward the case discovery" to Dr. Clionsky. [Id.]. Appellate counsel also "attach[ed] a draft affidavit" for Dr. Clionsky to sign, wherein Dr. Clionsky would attest that she needs to conduct a full review of the records. [Id.].

Dr. Clionsky responded three days later, on May 23, 2019. [Id. at 22–25 (front of "Exhibit F")]. "Since we last talked," Dr. Clionsky explained, "my schedule has become jammed." [Id. at 24]. "I won't have time to even touch any cases beyond those I currently have for at least another 4-6 months." [Id.]. Dr. Clionsky then advised appellate counsel that "[a]t this point in time . . . I don't believe it is even remotely possible for me or for anyone else who understands the science to be able to . . . render an opinion about [Santiago's] criminal responsibility[.]" [Id.]. Dr. Clionsky clarified that her initial email, from March 2019, was not intended to suggest that an expert could today testify to Santiago's mental state in 2012. Rather, Dr. Clionsky was "trying to explicitly state that had an expert been consulted then [in 2012] it would have made a difference." [Id.]. Dr. Clionsky emphasized this, stating that "[t]here is nothing I or anyone else can do to compensate for that lost opportunity to test [Santiago's] brain" because so much time has passed, so the "opportunity has been lost forever." [Id. at 25].

On May 28, 2019, appellate counsel informed Santiago of Dr. Clionsky's opinion via letter, and explained that "CPCS will not authorize [counsel] to file a motion for a new trial because [she] cannot show that [there is] even a small chance of succeeding with such a motion." [Id. at 20

14

("Exhibit E")]. In light of Dr. Clionsky's assessment, appellate counsel advised Santiago that "the right thing" to do "is to go forward with" his appeal to the SJC. [Id.].

The emails show that appellate counsel made a strategic decision to focus her efforts on direct appeal to the SJC rather than pursue a new trial, based on Dr. Clionsky's statements that neither she, nor any other expert, could undo the passage of time and provide Santiago with a helpful expert opinion. Appellate counsel also had to consider the reality that there were limited resources available to Santiago, and concluded it was best not to waste those resources on a motion for a new trial where success on such a motion was remote. Santiago's claims that appellate counsel "ignor[ed] . . . repeated request[s]" for records from Dr. Clionsky or that counsel's performance was "egregious" are unsupported by the documents he submits to the Court. [See Dkt. Nos. 2 at 10; 16 at 3]. The same is true of Santiago's assertion that appellate counsel misled him regarding filing an additional motion for funds. [Dkt. No. 16 at 5]. Counsel informed Santiago that CPCS refused to authorize additional funding after Dr. Clionsky provided candid assessment that neither she, nor any other expert, could help build a credible defense for him.

In sum, Santiago does not point to anything supporting his claim that appellate counsel's performance was deficient, so his Ground Four is not potentially meritorious. Cf. Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) ("A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong."). Santiago's Ground Four should be dismissed.

**B.     Grounds One and Two Fail to Present Cognizable Federal Error**

In Grounds One and Two, Santiago asserts the same claims he made before the SJC: that the trial judge did not properly reinstruct the jury on intoxication (Ground One) or instruct on lack of criminal responsibility (Ground Two). [Dkt. No. 1 at 5–8]. For Ground One, Santiago contends

15

that when the trial judge "was asked a question about the difference between first and second degree murder," she "failed or left out[] the instruction on how intoxication may be considered in determining whether the Commonwealth had proven the element of extreme atrocity or cruelty." [Id. at 5]. For Ground Two, Santiago states that "there was sufficient evidence through testimony[] that the defendant suffered a blow to the face, knocking him unconscious[] prior to the murder," but the trial judge failed to "instruct the jury on lack of criminal responsibility[.]" [Id. at 7].

"It is a fundamental principle of the law of federal habeas corpus . . . that no habeas claim is stated" under 28 U.S.C. § 2254 "unless the alleged errors are violations of the Constitution, laws, or treaties of the United States." Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (citing Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)). "Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised." Id. (citing Estelle, 502 U.S. at 67). Santiago's Grounds One and Two do not expressly allege any infringement of federal law and are outside the scope of federal habeas review. Indeed, Grounds One and Two are "not cognizable on federal habeas review because improper jury instructions generally will not form the basis for federal habeas relief." Carrington v. Massachusetts, 490 F. Supp. 3d 410, 420 (D. Mass. 2020) (citation omitted).

Even if Santiago had raised a cognizable federal error in Grounds One and Two, those claims would be unexhausted. "To achieve exhaustion, 'a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim.'" Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (edits in original) (quoting Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997)). "In order to carry this burden, the petitioner must show that he tendered his federal claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'"

Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (quoting Adelson, 131 F.3d at 262). Exhaustion requires "that a habeas petitioner present, or do his best to present, his federal claim to the state's highest tribunal." Adelson, 131 F.3d at 263 (citing United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17 (1925); Mele v. Fitchburg Dist. Court, 850 F.2d 817, 820 (1st Cir. 1988)). The Court is therefore tasked with examining "whether the petitioner fairly presented the federal claim to the SJC[.]" Id. (quoting Mele, 850 F.2d at 823). Santiago's brief to the SJC raised the same arguments presented in Grounds One and Two of his habeas petition—relying solely on state law.[8] [See Dkt. No. 10-1 at 15–36]. There is no specific constitutional language, no citation to federal precedent, and no trappings that could suggest Santiago intended to raise a federal question. See Nadworny v. Fair, 872 F.2d 1093, 1101 (1st Cir. 1989). Hence, it is doubtful "that a reasonable jurist would have been alerted to the existence of the federal question." Casella, 207 F.3d at 20 (quotation omitted).

Since Santiago's Grounds One and Two fail to present a cognizable federal claim for habeas review, and in any case are unexhausted, they should be dismissed.

    **C.**    **Ground Three Fails on the Merits**

In his brief to the SJC, Santiago argued that trial counsel's failures to emphasize "intoxication as well as the evidence of insanity or mental impairment" are "errors" that "constitute[] ineffectiveness under the federal standard" established by Strickland. [Dkt. No. 10-1 at 36–37]. Santiago's habeas petition reiterates part of this claim in Ground Three—that trial counsel failed "to request the omitted instruction on intoxication," which amounts to "ineffectiveness" because "there was clearly no strategic advantage to failing to have the jurors

---

[8] Santiago's brief to the SJC cites a 1977 decision from the Seventh Circuit—which involved an appeal of a federal conviction, not a habeas petition—to support the unremarkable proposition that "any additional instructions" from the trial judge "must, obviously, be correct." [Dkt. No. 10 at 20 (citing United States v. Castenada, 555 F.2d 605, 612 (7th Cir. 1977))].

17

consider" that issue. [Dkt. No. 1 at 8]. Santiago's Ground Three thus asserts an exhausted and cognizable federal error, which the Court can consider on the merits: whether trial counsel's performance was deficient under the standards of Strickland, and, if so, whether Santiago was prejudiced by this deficient performance. See Sleeper, 510 F.3d at 38.

The alleged error involves "the instructions given in response to a jury question[.]" Santiago, 485 Mass. at 427. Santiago "argues that the judge omitted from that instruction a reminder that the jury could consider evidence of [Santiago's] intoxication when deciding whether the Commonwealth had proved that he acted with extreme atrocity or cruelty." Id. at 428. However, Santiago "does not dispute that the judge included such an instruction in her original charge; rather, [he] contends that the judge erred by not repeating the instruction in response to the jury question," and that trial counsel "did not object to this omission." Id. at 428–29. But at Santiago's request, the trial judge "repeated her instruction that the jury could consider intoxication when deciding whether the Commonwealth had proved the element of intent," explaining:

> [T]he ingestion of alcohol by the defendant is a factor you may consider in determining whether or not the Commonwealth has proven beyond a reasonable doubt the necessary intent required of the particular crime and/or the state of mind required of the particular crime.

Id. at 429 (edits in original). The Court cannot conclude that trial counsel's performance "fell below an objective standard of reasonableness under the circumstances." Sleeper, 510 F.3d at 38 (citation omitted). "Reasonableness is assessed 'as of the time of counsel's conduct,'" so "'scrutiny of a counsel's performance must be highly deferential' and the Court must make 'every effort . . . to eliminate the distorting effects of hindsight.'" United States v. Rodriguez, 352 F. Supp. 3d 156, 160 (D. Mass. 2019) (edits in original) (quoting Strickland, 466 U.S. at 689, 690). At Santiago's trial, the judge instructed the jury that they could consider evidence of intoxication multiple times—and at least once directly in response to Santiago's counsel's request. It is true

that the trial judge did not explicitly mention the relationship between intoxication and "extreme atrocity or cruelty" in her supplemental instruction. However, she clearly noted to the jury that "ingestion of alcohol . . . is a factor" relevant to Santiago's "state of mind." Santiago, 485 Mass. at 429. In these circumstances, the difference between the supplemental charge—including instruction that the jury could consider intoxication to decide whether the Commonwealth proved intent—versus an express reference to "extreme atrocity or cruelty" is marginal at best. Thus, trial counsel's failure to object to this instruction because it did not include the specific phrase, "extreme atrocity or cruelty," was neither unreasonable under the circumstances nor deficient.

Santiago also fails to show that trial counsel's performance resulted in prejudice. "In order to show prejudice, a petitioner must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Rodriguez, 352 F. Supp. 3d at 160 (quoting Strickland, 446 U.S. at 694). As noted, the difference between the supplemental charge as given versus an instruction with an express reference to "extreme atrocity or cruelty" is marginal. Second, the jury convicted Santiago of first degree murder under two distinct theories of Massachusetts law, extreme atrocity or cruelty and deliberate premeditation. Santiago, 485 Mass. at 416. The challenged instruction went to extreme atrocity or cruelty only, so even if the trial judge's reinstructions on intoxication had marred the jury's analysis this would not have impacted "the result of the proceeding," because the jury also convicted on the theory of deliberate premeditation. "Thus, any error in the reinstruction would not have resulted in prejudice to the defendant." Id. at 429 n.8 (citation omitted).

Santiago's Ground Three, alleging ineffective assistance of trial counsel, presents a cognizable and exhausted federal error. However, Ground Three fails on the merits, and therefore should be dismissed.

## III.  CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Respondent's motion to dismiss Santiago's habeas petition be GRANTED, and that the petition be dismissed in its entirety. Santiago's motion to hold his petition in abeyance should be DENIED.[9]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[9] The Parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), they are entitled to object to this Report and Recommendation by filing a specific written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation.  Such written objections must specifically identify the portion of this Report and Recommendation to which objections are made and the basis for those objections.  The parties are further advised that the First Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review.  See, e.g., M. v. Falmouth Sch. Dep't, 847 F.3d 19, 26 (1st Cir. 2017); see also Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988).