UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSE SANTIAGO,                              )
                                           )
                                           )        CIVIL ACTION NO.
                     Petitioner,           )        4:21-40115-TSH
                                           )
          v.                               )
                                           )
MATTHEW J. DIVRIS,                         )
                                           )
                     Respondent.           )
                                           )

**ORDER AND MEMORANDUM ON PETITIONER'S MOTION FOR A CERTIFICATE OF APPEALABILITY (Docket No. 26)**

May 17, 2023

**HILLMAN, S.D.J.**

Jose Santiago ("petitioner") moves for a certificate of appealability to this Court's dismissal of his petition for a writ of habeas corpus. For the reasons below, that motion is ***denied***.

**Background**

*1. State Proceedings*

Petitioner was convicted of first-degree murder in state court. The facts of this case are incorporated from the Report and Recommendation. (Docket No. 19, at 2-4). Relevant to this motion, there is some evidence that petitioner received a head injury prior to the murder and was acting strangely during and after the murder.

At trial, the petitioner notified the court he would proceed on a theory of lack of criminal responsibility. However, he refused to meet with the court-appointed examiner and was barred from introducing expert testimony. *Commonwealth v. Santiago*, 485 Mass. 416, 420, 150 N.E.3d

746, 752 (2020). He was ultimately convicted of first-degree murder under theories of deliberate premeditation and extreme atrocity or cruelty.

Post-conviction, petitioner's appellate counsel investigated the possibility of moving for a new trial on an ineffective assistance of counsel theory. Appellate counsel had preliminary email discussions with the potential expert witness Dr. Clionsky so that she could justify requesting funds from the Committee for Public Counsel Services ("CPCS") for Dr. Clionsky's services. Based on their initial conversations, appellate counsel believed Dr. Clionsky could testify that petitioner suffered a "traumatic brain injury" ("TBI") the night of the murder. Dr. Clionsky explained that a TBI could be diagnosed from an examination of medical records as well as interviewing eyewitnesses. After several emails, however, Dr. Clionsky explained that there had been a misunderstanding. While she was comfortable testifying that a diagnosis of a TBI *could* have occurred if a clinician had been available at trial, and that such an examination *should* have occurred, such a diagnosis was impossible years after the incident, especially given the "sparse" records available for the petitioner. Dr. Clionsky opined that:

> [i]f, as you say, [the medical records] are sparse, *then there isn't anything I, or any other responsible expert could do, to establish his baseline level of cognition before the crime, during the crime, or the effect of a mechanical impact on his capacity*. An opinion can be offered re: the potential effects of a mild TBI on anyone's executive function.

(Docket No. 15, "Exhibit F"[1]) (emphasis added). In appellate counsel's view, this foreclosed the possibility that CPCS would authorize funds for the expert. She informed petitioner that his time would be better spent on direct appeal to the Supreme Judicial Court focusing on the jury instructions used at trial. That appeal failed and petitioner's conviction was upheld.

### 2.   Federal Proceedings

---

[1] The petitioner's exhibits are not paginated.

The petitioner moved for a writ of habeas corpus in this Court on four grounds, only one of which is relevant here: that his appellate counsel was ineffective in not adequately pursuing a motion for a new trial based on the ineffective assistance of his trial counsel ("Ground Four"). The petitioner concedes that ground is unexhausted at the state level, but filed it to preserve his ability to file the writ due to the statute of limitations.

The petitioner moved for an abeyance while he attempted to secure funding to mount a challenge in state court. The respondent moved to dismiss the petition on the theory that Ground Four was unexhausted, that "mixed" petitions are subject to complete dismissal, and that Ground Four did not merit an abeyance. This Court, adopting in part the Report and Recommendation, ruled that Ground Four did not merit an abeyance because it was not potentially meritorious and denied the petitioner's motion. (Docket No. 24). This Court also issued an order allowing the petitioner to continue on the other claims if he voluntarily dismissed Ground Four by 9/23/2022. (*Id.*). In other words, if petitioner did not dismiss his unexhausted claim, this Court would grant respondent's motion to dismiss. Because this Court received no submission from the petitioner, the petition was dismissed. (Docket No. 25).

In the instant motion, petitioner submits documentation that purports to show that he attempted to comply with the filing deadline. And rather than dismissing Ground Four, petitioner moves for a Certificate of Appealability, arguing that the First Circuit should review this Court's holding that a stay is not warranted.

<u>**Analysis**</u>

*1. Timeliness*

Petitioner submits documentation showing an "informal complaint form" he filed with the Department of Corrections on 10/19/2022, where he requests the mail he sent on 9/20/2022,

prior to this Court's deadline, to be sent to this Court. (Docket No. 26-1, at 1). His complaint was "granted" and the Department of Corrections responded that "$1.50 of postage was paid/mailed out 9/20/2022." (*Id.*). Petitioner also submits documentation showing $1.50 of postage was charged on 9/20/2022. (*Id.* at 4). This Court did not receive anything from the petitioner. Although all the petitioner has technically proven is that he sent *something* on 9/20/2022, this Court assumes that he has met his burden of showing compliance with the 9/23/2022 deadline.

### 2.   *Final Order*

This Court's prior order is final for the purpose of a Certificate of Appealability. The Court's denial of petitioner's motion for an abeyance mandated the motion to dismiss absent the voluntary dismissal of Ground Four. Therefore, his petition may only proceed if this Court's order denying an abeyance is reversed. In adopting the Report and Recommendation as it related to Ground Four, this Court found that Ground Four was not exhausted, that the petitioner had good cause in failing to exhaust state court remedies, that he did not engage in intentionally dilatory tactics, but that the claim was not "potentially meritorious." It is on the finding that Ground Four is not "potentially meritorious" that petitioner moves for this Court to issue a Certificate of Appealability.

### 3.   *Substantial Showing*

To obtain a Certificate of Appealability the petitioner must make a "substantial showing." To meet that standard "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is a low bar; "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full

consideration, that petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

Thus, petitioner must show that it is "debatable" that Ground Four is "potentially meritorious."

Ground Four is an ineffective assistance of counsel claim, which requires a showing that "defense counsel's performance was (1) constitutionally deficient and (2) that this deficiency prejudiced her case." *Field v. Hallett*, 37 F.4th 8, 17 (1st Cir. 2022). As to the first prong, counsel acts in a constitutionally deficient manner when their conduct is "objectively unreasonable under prevailing professional norms." *Id.* (citations omitted). This is a "highly deferential" standard. *Id.* at 18 (citation omitted). "To demonstrate prejudice, [petitioner] must show that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). Under state law, ineffective assistance of counsel claims in first-degree murder cases similarly require "an error" by the lawyer and proof "that error was likely to have influenced the jury's conclusion." *Santiago*, 485 Mass. at 422, 150 N.E.3d at 754 (citation omitted).

The petitioner argues that if his medical documents and associated discovery had been turned over to Dr. Clionsky she could have diagnosed him with a TBI. Petitioner's theory is that would have satisfied the state ineffective assistance claim because it would have shown the trial lawyer made an "error" in not investigating a TBI and that a jury would likely have come to a different decision on his criminal responsibility post-diagnosis. In not pursuing this, petitioner argues his appellate counsel was ineffective under the federal standard: it was "unreasonable under prevailing professional norms" not to pursue this viable motion for a new trial and he suffered prejudice because the motion was likely to succeed.

However, Dr. Clionsky's email contradicts petitioner's argument that she could have diagnosed him. She specifically concludes that, given the sparse records, "there isn't anything I,

or *any other responsible expert* could do, to establish his baseline level of cognition before the crime, during the crime, or the effect of a mechanical impact on his capacity." (Docket No. 15, "Exhibit F") (emphasis added). Petitioner does not argue that his appellate counsel was mistaken in describing his medical records as "sparse." Instead, petitioner argues that contemporaneous records in the form of eyewitness statements exist. But Dr. Clionsky wrote that it is necessary for a clinician to *interview* witnesses close to the time of the event, not merely to review contemporaneous testimony years after the event. Although Dr. Clionsky requests discovery, including eyewitness accounts, it is clear from the correspondence it is not to support a clinical diagnosis, but to establish that a diagnosis could have been made closer to the time of the murder.

In light of Dr. Clionsky's email, it was reasonable for the appellate counsel to conclude that no expert could testify to petitioner's mental condition the night of the murder. It was also reasonable for appellate counsel to further conclude that petitioner could not prove the trial counsel's alleged error would have influenced the jury. *Field*, 37 F.4th at 19 (a failure to prove prejudice is fatal to a claim under *Strickland* even when error is established). Because a state law ineffective assistance of counsel claim was not tenable, appellate counsel was justified in not pursuing additional funds to secure the expert and instead to focus on pursuing the direct appeal. As a result, appellate counsel's conduct was not "objectively unreasonable under prevailing professional norms" under the "highly deferential" federal standard and the first prong of the ineffective assistance of counsel standard against petitioner's appellate counsel fails. Furthermore, the second prong fails as well because there is not a "reasonable probability" that petitioner could have convinced the jury of a different result by introducing generic evidence about TBIs—the only evidence Dr. Clionsky was willing to testify to, or thought any competent

professional could testify to. Without specific proof that *petitioner* had a TBI, such evidence would have added little to the evidence received by the jury. *Cf. Santiago*, 458 Mass. at 425-27, 150 N.E.3d at 756-57 (finding that there was no justification for a jury instruction on mental impairment generally where there was insufficient evidence to demonstrate that petitioner had a mental impairment). Even under the "low bar" established by the Supreme Court, that finding is not debatable nor are the issues presented adequate to deserve encouragement to proceed further.

## Conclusion

For the reasons above, the motion for a Certificate of Appealability is ***denied***.


**SO ORDERED**

***/s/ Timothy S. Hillman***
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**
